UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JESSIE WAYNE PILLETTE,

        Plaintiff,         Case No. 1:15-cv-30

v.         Honorable Janet T. Neff

RONALD GRAMBAU,

        Defendant.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed. The claim under § 1983 will be dismissed for failure to state a claim. The claim under state law will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction.

**Factual Allegations**

Plaintiff Jessie Wayne Pillette is incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility, though the events giving rise to the complaint occurred while he was incarcerated at the Oaks Correctional Facility (ECF). Defendant Ronald Grambau is an Assistant Resident Unit Supervisor (ARUS) at ECF.

Plaintiff contends that in October 2012 he initiated a "civil rights" action in Wayne County Circuit Court seeking damages against "Boulevard Trumball Towing, Inc." (Compl. 3, docket #1.) On August 14, 2013, the circuit court allegedly determined that the cause of action was not frivolous and it issued a "Notification of the Results of Case Evaluation" which allegedly ordered that Plaintiff appear for a settlement conference on August 29, 2013. He was housed at the Carson City Correctional Facility (DRF) at the time. After receiving the notice, an officer at DRF made a copy of the order and discussed it with the litigation coordinator. The officer then told Plaintiff that if the state court would not allow a telephone conference, then the MDOC would arrange to have Plaintiff transported to his conference.

On August 27, 2013, however, Plaintiff was transferred to ECF. The following day, Plaintiff told Defendant Grambau that he was the plaintiff in a lawsuit pending in Wayne County Circuit Court, and that he was required to appear for a settlement conference on August 29 or his case would be dismissed. Plaintiff asked Grambau to look at the court order requiring his appearance and to discuss it with the litigation coordinator at ECF. Grambau responded, "No, I'm not looking at that court order. You probably forged it." (*Id.* at 5). Plaintiff asked Grambau to contact the litigation coordinator, who is allegedly responsible for verifying the validity of such

orders and ensuring compliance with them. Defendant stated, "No, I'm not calling anyone. Too bad. It's on Carson City. If you don't like it, sue me." (*Id.*)

The next day, Plaintiff sent a letter to the Wayne County Circuit Court explaining Defendant's actions and asking to reschedule the settlement conference. Plaintiff also filed a grievance against Grambau. The Resident Unit Manager (RUM) interviewed Plaintiff regarding the grievance and denied it because ECF never received notice from the "central court process" regarding the court order. (*Id.*)

Several months later, Plaintiff contacted the Wayne County Circuit Court to find out the status of his case. He received a response indicating that the case had been dismissed on August 29, 2013, because Plaintiff failed to appear for the settlement conference. Plaintiff claims that he has not received a copy of the state court's order of dismissal; however, the time period for re-filing or re-opening the case had passed by the time he learned that his case was dismissed.

Plaintiff claims that, by failing to take steps to assist Plaintiff with complying with the state court's order, Defendant Grambau interfered with Plaintiff's ability to access the courts, thereby violating "Article IV, § 2, cl. 1 (Privileges and Immunities Clause), the First Amendment (Petition Clause), the Fifth Amendment (Due Process Clause) and the Fourteenth Amendment (Equal Protection and Due Process Clauses) of the United States Constitution." (Compl. 7, docket #1). In addition, Plaintiff claims that Grambau's actions constitute gross negligence under state law.

As relief, Plaintiff seeks compensatory and punitive damages.

**Discussion**

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Count I

In Count I of the complaint, Plaintiff contends that Defendant Grambau "interfered with . . . Plaintiff's ability to access the courts in a manner that resulted in the dismissal of his [state court] lawsuit[.]"[1] (Compl. 7, docket #1.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

---

[1] Plaintiff cites several parts of the Constitution as the basis for his claim, including the Privileges and Immunities Clause of Article IV, the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. The only right at issue in Count I, however, is Plaintiff's right of access to the courts. This right stems from multiple sources, including many of those cited by Plaintiff. *See Boswell v. Mayer*, 169 F.3d 384, 388 (6th Cir. 1999) (stating that the right of access to the courts "probably stems from the Fourteenth Amendment's Due Process or Equal Protection Clauses"); *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006) (stating that prisoners "have a First and Fourteenth Amendment right of access to the courts").

In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the defendant's actions, or the shortcomings in the prison's resources, have hindered or are presently hindering his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that, to provide sufficient notice to the defendant, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). In other words, "the complaint should state the underlying claim in accordance with Federal Rule of Civil

Procedure 8(a), just as if it were being independently pursued . . . ." *Id.* at 417 (footnote omitted). Also, the complaint must "describe any remedy available under the access claim and presently unique to it." (*Id.* at 417-18).

Plaintiff's claim fails because he has not sufficiently alleged injury to a nonfrivolous claim, as required by *Lewis* and *Christopher*. The complaint contains no description of the underlying claims that Plaintiff was pursuing in his state court action. Thus, it does not provide sufficient notice to allow Defendant or the Court to apply the "nonfrivolous" test or to determine whether the "'arguable' nature of the underlying claim[s] is more than hope." *Christopher*, 536 U.S. at 416.

Plaintiff alleges that the state court determined that the case was not frivolous when it issued its "Notification of the Results of Case Evaluation."[2] Even if the state court did make such a determination, however, Plaintiff must satisfy the pleading standard in *Christopher* in order to proceed on his access claim in federal court. Merely alleging that the state court made such a determination does not provide notice to Defendant of the underlying claim.

Furthermore, Plaintiff's allegations do not permit a reasonable inference that his state court action is the *type* of court action to which the right of access applies. *See Iqbal*, 556 U.S. at 679 (requiring the facts alleged to permit an inference of more than the "mere possibility of misconduct"). As indicated *supra*, the right of access to the courts does not require prison officials to provide assistance with filing or pursuing all possible claims that a prisoner might pursue.

---

[2]The notice is attached to the complaint. (*See* Notification of the Results of Case Evaluation, Ex. A to Compl., docket #1, Page ID#14.) Contrary to Plaintiff's assertion, it is not an order and it does not indicate whether the court made any findings regarding the potential merits of Plaintiff's claims. Instead, it is merely a notice that the parties must appear for a settlement conference because they did not agree to the results of the case evaluation. According to the notice, the case evaluators unanimously determined that Plaintiff should be awarded $0.00, but Plaintiff rejected that outcome. (*Id.*)

Instead, it requires them to provide assistance when prisoners are "attack[ing] their sentences, directly or collaterally," or "challeng[ing] the conditions of their confinement." *Lewis*, 518 U.S. at 355. Plaintiff does not allege any facts from which to infer that his state court action attacked his sentence or challenged the conditions of his confinement. Indeed, Plaintiff would not sue a private towing company in order to attack his sentence, and it is difficult to conceive how such an entity could have any involvement in the conditions of his confinement. If Plaintiff's action did not concern his sentence or confinement, then his inability to appear for the settlement hearing did not violate his constitutional rights. Instead, it was "simply one of the incidental (and perfectly constitutional) consequences of [his] conviction and incarceration." *Id.* Thus, for all the foregoing reasons, Count I of the complaint does not state a plausible claim.

### B. Count II

In Count II of the complaint, Plaintiff asserts that Defendant's actions constitute gross negligence under state law. Because Plaintiff's federal claim in Count I will be dismissed, the Court declines to exercise jurisdiction over the state-law claim in Count II. In determining whether to retain supplemental jurisdiction over a claim arising under state law, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850

(6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's claim in Count II will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claim in Count I of the complaint, which arises under 42 U.S.C. § 1983, will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The claim in Count II, which arises under state law, will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: January 23, 2015                /s/ Janet T. Neff
                                       Janet T. Neff
                                       United States District Judge